IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| PRINCEO LAQUAN BROOKS,  )  <br>     Plaintiff,  ) <br> v.  ) <br>       ) <br> MARTIN KUMER, *et al.*,  ) <br>     Defendants.  ) | Civil Case No. 7:20-cv-00104 <br><br> By: Elizabeth K. Dillon <br>     United States District Judge |

**MEMORANDUM OPINION**

Plaintiff Laquan Brooks is an inmate at the Albemarle-Charlottesville Regional Jail ("ACRJ"). Proceeding pro se, he filed his initial complaint pursuant to 42 U.S.C. § 1983, naming as defendants ACRJ, Col. Martin, Kumer, and C/O Thomas. The court conducted an initial review of the complaint, pursuant to 28 U.S.C. § 1915(e)(2), and determined that Brooks's initial complaint was subject to dismissal as pled. The court granted Brooks an opportunity to amend his complaint.

Brooks filed his amended complaint, alleging claims against Superintendent Martin Kumer, Correctional Officer Joseph Thomas, and Physician Assistant Johanna Claasen. All three defendants have filed motions to dismiss. Thomas and Claasen have submitted their affidavits with exhibits including medical records. Brooks has also submitted evidentiary exhibits including medical records and other documents.

I. BROOKS'S CLAIMS

At about 7:30 p.m. on the evening of January 6, 2020, Brooks was returning to his cell at ACRJ. Defendant Thomas was conducting rounds and closed the hydraulic door to Brooks's cell. The hydraulic door is remotely controlled by correctional officers who stand in the hallway and observe through a windowed door. Correctional officers are trained and required to give advance warning of door closings. The parties dispute whether Thomas had announced he was

1

closing the cell door. Brooks alleges that Thomas did not give advance notice, whereas Thomas maintains he verbally announced the door closure.

When Thomas closed the hydraulic door, three of Brooks's fingers were caught in the door, but Brooks was able to extricate them. Brooks' right fifth digit (pinky finger) was fractured. The fracture is variously described in Brooks's medical records as a small avulsion fracture or ligamentous calcification, or elsewhere as an acute chip fracture.

Brooks alleges that he immediately screamed and that he was in such severe pain that he urinated and defecated on himself. Brooks apparently had a change of clothes available to him because he alleges that he took five minutes to change out of his soiled clothing. (Amended Complaint, Dkt. No. 18, p. 11.) Brooks alleges he had to wait 20 to 30 minutes, until Thomas made his next round, to inform Thomas of his injury, and he complains that his cell lacked an emergency call button.

Thomas avers that he heard nothing after he remotely closed Brooks's cell door. Thomas agrees that he made rounds shortly thereafter and that Brooks informed Thomas of the finger injury at about 7:18 p.m. Brooks alleges he made Thomas aware that he had defecated and urinated on himself and that Thomas stated he would bring a change of clothing. Brooks alleges Thomas did not bring the (replacement) change of clothing that night. Thomas agrees that Brooks did request a change of clothing, but he maintains that Brooks did not mention soiling himself and that Brooks did not notice any smell. Thomas prepared an incident report on January 15, 2020.

The parties agree that Thomas informed the nurse on duty (Oprandy) and that the nurse evaluated Brooks's injury that evening. The nurse emailed Defendant Claasen that evening, informing Claasen that Brooks was unable to flex his injured finger and that the nail bed was

discolored.  Brooks alleges that the nurse also relayed her opinion that Brooks either caused or exaggerated his injury, and that her opinion caused some delay in his treatment.

On January 7, 2020, Claasen ordered an X-ray.  Brooks alleges he was scheduled to be seen by Claasen the morning of January 7, 2020, but this did not happen.  Instead, Claasen saw Brooks on January 8, 2020, at which time she evaluated Brooks, drained a small amount of blood to relieve pain under the fingernail and ordered medical tape so that Brooks could immobilize the pinky finger by taping it to his ring finger.  The X-ray was taken the same day, and Brooks was informed of the results (small avulsion fracture).  On January 10, 2020, Claasen consulted with a medical provider who approved ibuprofen for Brooks's pain.

Claasen referred Brooks for further evaluation at the University of Virginia Hand Center (UVHC), which occurred on January 13, 2020.  UVHC advised that Brooks should wear a splint for six weeks and prescribed medical tape and Trazodone (a serotonin modulator for treatment of depression).  Brooks was seen again at UVHC on March 4, 2020, at which time it was determined that Brooks's finger lacked 30 degrees of flexion and that he should continue wearing a splint for another six weeks and continue with Trazodone.  Brooks was seen again at UVHC on June 8, 2020, at which time his finger was still lacking 15 degrees of flexion.[1]  He was directed to wear the splint only at night for another three weeks.  UVHC indicated that surgery might be considered at some future date, if Brooks's condition worsened.  There are no subsequent medical records in the court's record.

Brooks makes claims against Defendant Kumar for failure to train (which Brooks characterizes as an Eighth Amendment claim), failure to protect, vicarious liability, improper training, and failure to adequately warn of the door danger in Spanish language materials, not

---

[1] Brooks received another X-ray and medical attention in May 2020 for a separate injury to his right hand, incurred in a fight.

3

just English language (Counts 1-4, and 15).  Brooks alleges claims against Defendant Thomas based on Thomas's alleged failure to announce the closing of the hydraulic door, failure to provide timely medical care, and failure to bring clean clothes (negligence, 14th Amendment deliberate indifference, failure to protect, 8th Amendment cruel and unusual punishment) (Counts 5-9, 13, 14).  Brooks alleges claims against Defendant Claasen based on delay in treatment, in that Brooks alleges the medical attention he received on January 8, 2020, should have occurred on January 7, 2020.  (Counts 10, 14.)  Finally, Brooks alleges claims against all defendants for deliberate indifference to his serious medical needs and for emotional distress based on Brooks's allegation he was ridiculed by inmates because he could not wipe himself clean.  (Counts 11, 12.)

## II.  LEGAL STANDARD

Defendants have filed motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  According to Rule 12(d), if matters outside the pleadings are presented to and not excluded by the court, a Rule 12(b)(6) motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Claasen and Thomas have submitted their affidavits with their motions to dismiss.  They have each appended documentary exhibits to their affidavits, including Brooks's medical records and an incident report.  For his part, Brooks has incorporated and/or appended evidentiary documents with his amended complaint and his response to the motion to dismiss, including copies of his medical records with his notes on them, excerpts from the ACRJ inmate handbook, and a warning sticker advising caution.  The parties have thus been given reasonable opportunity

to present all the material that is pertinent to the motions. The court will therefore treat defendants' motions as motions for summary judgment under Rule 56.

Under Rule 56, summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists only where the record, taken as a whole, could lead a reasonable jury to return a verdict in favor of the nonmoving party. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009). In making that determination, the court must take "the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc).

A party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but … must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Moreover, "[t]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id*. at 24-48. Instead, the non-moving party must produce "significantly probative" evidence from which a reasonable jury could return a verdict in his favor. *Abcor Corp. v. AM Int'l, Inc.*, 916 F.2d 924, 930 (4th Cir. 1990) (quoting *Anderson*, 377 U.S. at 249-40).

III.  DISCUSSION

**A. Defendants are entitled to summary judgment as to all constitutional claims for inadequate medical care.**

Brooks has alleged claims against all defendants, and individually against Claasen and Thomas, for inadequate medical care constituting deliberate indifference to his serious medical needs. In order to state an Eighth Amendment claim based on the denial of medical care, a plaintiff must demonstrate that the defendant's actions (or failure to act) amounted to deliberate

5

indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). This requires a showing of two elements. First, the plaintiff must provide evidence showing that he suffered from an objectively serious medical need. A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008); *see also Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (explaining that the requirement that a particular medical need be "serious" stems from the fact that "society does not expect that prisoners will have unqualified access to health care").

Second, to show deliberate indifference, the plaintiff must show that, subjectively, the defendant was aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106. Instead, the defendant's disregard for the plaintiff's medical condition must have been "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Jackson v. Sampson*, 536 F. App'x 356, 357 (4th Cir. 2013).

On the record before the court, Brooks cannot satisfy either prong of the deliberate indifference standard. As this court noted in its initial assessment of Brooks's complaint, it is far from clear that a broken finger would constitute a sufficiently serious medical condition so as to satisfy the objective element of the *Estelle* test. Indeed, "[n]umerous courts have held that a broken finger is generally not a sufficiently serious medical need to support an Eighth Amendment violation." *Jacobs v. Wilson*, No. 3:13-cv-89, 2014 WL 3700553, at *5 (N.D. W.Va. July 24, 2014) (collecting authority); *but see Thompson v. Clarke*, 7:17-cv-00111, 2018

6

WL 4689474, at *5 (W.D. Va. Sept. 28, 2018) (acknowledging the authority so holding, but concluding there was a dispute of fact as to whether the objective prong was satisfied where the plaintiff suffered "more than a mere broken finger"; his injuries included "a finger fracture, a dislocated finger, bruises, and emotional distress").

The treatment plan that Brooks received from UVHC mitigates against a finding that Brooks's finger injury was sufficiently serious to support an Eighth Amendment claim. UVHC advised Brooks to wear a splint full time for six weeks, and ordered Trazodone but not additional pain medication. At Brooks's next visit, two months later, UVHC advised continued use of a splint. At Brooks' third visit, three months after that, UVHC advised the splint could be limited to night use for another six weeks, and that surgery might be contemplated if Brooks's condition worsened. This course of treatment, in and of itself, seems to indicate that Brooks's medical condition was not especially urgent, nor serious, nor disproportionate to the care that Brooks actually did receive from prison providers. Even if an especially severe finger injury, or an injury that is more complex and extensive than a single broken finger, might constitute a serious medical need, that was not Brooks's situation. Brooks's fractured finger was not a serious medical need.

Even if Brooks had satisfied the first prong of the *Estelle* test, he does not meet the second prong, as to any of the defendants. When Thomas became aware of the finger injury, he took action to obtain medical attention for Brooks by informing the on-duty nurse to attend to Brooks. When Claasen became aware of the finger injury, she ordered an X-ray, drained blood to relieve pain, ordered tape so that Brooks could immobilize the finger, contacted a provider who ordered ibuprofen pain medication, and arranged for off-site medical attention. Claasen took these measures in a timely manner, relative to the apparent degree of urgency. There is no

allegation that Defendant Kumer was even made aware of the finger injury, nor that he failed to take (or needed to take) any specific action to secure appropriate medical attention for Brooks. None of the defendants disregarded Brooks's medical condition, nor showed any gross incompetence nor shockingly inadequate attention to the need for care. Accordingly, this court will dismiss Counts 9[2], 10, 11, 12, 13 and 14 of the amended complaint.

**B. Thomas is entitled to summary judgment as to Brooks's other constitutional claims alleged against him.**

Brooks alleges a Fourteenth Amendment deliberate indifference claim against Thomas for the alleged failure to announce the closure of the hydraulic door (Counts 6 and 7), as well as a claim for failure to protect (which is understood to fall within the aegis of the Eighth Amendment) (Count 8), and an Eighth Amendment claim for cruel and unusual punishment for the alleged failure to bring clean clothes (Count 9).

The Eighth Amendment protects prisoners from cruel and unusual living conditions. *Rhodes v. Chapman*, 452 U.S. 337 (1981). To prove a constitutional claim related to an unsafe prison condition, plaintiff must show that the defendant prison official acted with deliberate indifference – that he or she knew, subjectively, the condition presented a substantial risk of serious harm and nevertheless failed to take "reasonable measures" to alleviate it. *Farmer*, 511 U.S. at 837. Simple negligence by officials, in failing to predict that a piece of prison equipment might cause an inmate physical injury, simply does not give rise to any constitutional claim actionable under § 1983. *See, e.g., County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998) ("[T]he Constitution does not guarantee due care on the part of state officials; liability for negligently inflicted harm is categorically beneath the threshold" of constitutional protections).

---

[2] Count 9 alleges an Eighth Amendment violation based on both Thomas's alleged (and facially disproven) failure to call the nurse, as well as Thomas's failure to bring a change of clothes. As discussed *infra*, Count 9 fails on the latter point as well. Count 9 is dismissed in its entirety.

Thomas disputes the allegation that he did not announce the closure of Brooks's hydraulic door. Even if a fact-finder were to resolve this factual dispute in Brooks's favor and find that Thomas failed to give warning that he was closing the hydraulic door, there is nothing in the record to show that this was done deliberately. Brooks has no constitutional claim against Thomas for negligent failure to announce the closure. Accordingly, the court will dismiss Counts 6 and 7 of the amended complaint.

A constitutional "failure to protect" claim usually refers to a situation where prison officials fail to protect prisoners from harm at the hands of other prisoners. *See Farmer*, 511 U.S. at 832. Brooks has not alleged any sort of harm befell him at the hands of other prisoners. Therefore, the court interprets Brooks's claim at Count 8 as essentially re-stating the claims Brooks makes at Counts 6 and 7 regarding Thomas's alleged failure to provide warning of the impending door closure. The court will dismiss Count 8 of the amended complaint for the same reasons that Counts 6 and 7 are dismissed.

Brooks's Eighth Amendment claim that Thomas's failure to bring another set of clean clothes the night of January 6, 2020, constitutes cruel and unusual punishment, is facially trivial and unsupportable. Accepting as true Brooks's own account, he had already changed into clean clothes after he soiled the clothes he was wearing when the door closed on his finger. If another set of clean clothes was not immediately delivered to Brooks, this does not rise to the level of any constitutional violation. *See County of Sacramento v. Lewis*, 523 U.S. at 849. Accordingly, the court will dismiss remaining this aspect of Count 9 of the amended complaint. All claims against Defendant Thomas are dismissed.

## C. Kumer is entitled to summary judgment as to Brooks's other constitutional claims alleged against him.

Brooks alleges that Defendant Kumer failed to train his staff as a whole and to make sure that each and every employee is properly trained in regard to his or her duty, and that Thomas specifically was not properly trained, and that this makes Kumer vicariously liable for the actions of his employees including Thomas and Claasen (Counts 1, 3, 4). Brooks alleges that Kumer failed to ensure Brooks's safety and failed to post warning and caution signs, including Spanish language versions of warning signs and inmate handbooks. (Counts 2, 15.)

To impose liability on a supervisor for a failure to train subordinates, a plaintiff must plead and prove that 1) a subordinate actually violated the plaintiff's constitutional rights; 2) the supervisor failed to properly train the subordinate, thus illustrating a supervisor's "deliberate indifference" to the rights of violated by the subordinate; and 3) the failure to train actually caused the subordinate to violate the plaintiff's rights. *Brown v. Mitchell*, 308 F. Supp. 2d. 682, 701 (E.D. Va. 2005) (citing *City of Canton v. Harris*, 489 U.S. 378, 388-92 (1989)). Other than generalized and speculative allegations that Kumer failed to train employees including Thomas and Claasen, Brooks does not identify any evidence of any specific act or omission by Kumer that violated Brooks's rights. Moreover, as Brooks has not shown that Thomas or Claasen actually violated Brooks's constitutional rights, Brooks fails to satisfy the first element set forth in *Brown*. Accordingly, the court will dismiss Counts 1, 3 and 4 of the amended complaint.

With his amended complaint, Brooks provides a copy of a sticker that hangs or is posted on all main doors such as stairways and hallways but is not in cells or outside of cells. The sticker advises prisoners with bold "! CAUTION !" headers: "DO NOT ATTEMPT TO STOP OR CATCH THE DOOR WHEN IT IS CLOSING! HAZARD OF SMASHING FINGERS & HANDS." Brooks thereby demonstrates that prisoners are warned of door hazards. Brooks

alleges these posted warning stickers were insufficient, that additional warnings should have been provided in the inmate housing units and in the inmate handbook, and that the inmate handbook should be printed in Spanish as well as English so that everyone can be protected equally. Brooks claims these omissions constitute negligence. Even if this claim were generously interpreted as an attempt to state a Fourteenth Amendment deliberate indifference claim against Kumer, the claim must fail because Brooks has implicitly demonstrated that Kumer (if indeed Kumer was responsible to post the stickers) was not deliberately indifferent. Rather, whoever posted the stickers did undertake to warn prisoners to stay clear of the doors. Finally, as Brooks is clearly proficient in English, the question whether or not warnings should be provided in Spanish, as well as English, has no relevance to any claim made by Brooks.

**D. The court will decline to exercise jurisdiction of Brooks's state law claims.**

To the extent that any of Brooks's claims can be interpreted as state law tort claims, the court declines to exercise jurisdiction over them in light of the dismissal of his federal claims. See 28 U.S.C. § 1367(c)(3).

## IV. CONCLUSION

For the foregoing reasons, the court will grant summary judgment, pursuant to Rule 12(d) and Rule 56 of the Federal Rules of Civil Procedure, in favor of Kumer, Claasen, and Thomas as to Brooks's federal claims. Any state law claims will be dismissed pursuant to 28 U.S.C. § 1367(c)(3).

An appropriate order will be entered.

Entered: September 21, 2021.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge